## The Inhabitants of CHINA *vs.* SOUTHWICK & al.

S. erected a dam at the outlet of a pond, and thereby raised a head of water, but not so high as to flow or injure C's. bridge, at the head of the pond. Afterward, by great rains and a violent wind, the waters were thrown upon the bridge and it was destroyed. *Held*, that S. was not liable therefor to C. in damages; although if the dam had not raised the water to a certain height, the rain and the wind superadded might not have done the injury.

This was an action of the case, brought to recover damages for an injury done to the plaintiffs' bridge, at the head of *Twelve mile pond,* by a head of water, raised, as they alleged, by the defendant's dam at the outlet of the pond.

It appeared, on trial before the Chief Justice, that the defendants raised the water, by means of their dam, from five to seven feet — that the injury complained of was done on the 9*th* of *April,* 1831 — and that, from the latter part of *March,* in that year, through the month of *April,* the waters of the *Kennebec* were unusually high, and during a part of that period, higher than they had been known to have been for many years before. It was also proved, that at the time of the injury, and for some time before and after, the water at the head of the pond was higher than it had been known to have been before. There was positive testimony, that for a succession of years before and after the building of the plaintiffs' bridge, the defendants had, by their

dam, raised a head of water from one foot to nearly a foot and a half higher than it was raised by their dam in 1831, without flowing the plaintiffs' bridge, or doing any damage thereto — and there was testimony of an opposite tendency. It was further proved, that, at the time of the injury, there was a very violent southerly wind, which occasioned a heavier sea or swell in the pond, than had ever been noticed before, and which blew either directly or obliquely upon the bridge.

The counsel for the plaintiff requested the Judge to instruct the jury, that if they were satisfied from the evidence, that the defendants' dam was instrumental in producing the injury complained of, they were liable for such injury, although they should believe that the wind also contributed thereto. And further, that if they were satisfied that if there had been no dam whatever where the defendants' dam was in 1831, the injury would not have happened, the defendants were in that case liable for the injury.

But the Judge instructed the jury, that if the damage was occasioned by great rains, or by the violence of the wind, the defendants were not liable, if the jury were satisfied that the head of water, raised by the defendants' dam in 1831, was not high enough to flow the plaintiffs' bridge, or to do damage thereto.

A verdict was returned for the defendants. If the instructions requested and withheld, should have been given, or if those given, were, in the opinion of the Court, erroneous, the verdict was to be set aside, and a new trial granted, otherwise judgment was to be rendered thereon.

*Allen* and *Wells*, for the plaintiffs.

The case finds the erection of the dam, raising of the water, and injury to the plaintiffs' bridge. To this injury the extraordinary wind and rains undoubtedly contributed, as well as the water raised by the dam — whether by the latter, more or less, was a question to be settled by the jury, — they were fully competent to find the proportions.

Every man is bound so to use his own property as not to injure another's.

In this case, the cause of the injury was *direct*, though these extraordinary rains happen at long intervals, and the defendants

are therefore liable. Suppose the case of a mill having a prior right to the stream, and one is erected below it, with a dam not high enough to injure the first mill, except at long intervals and during the occurrence of extraordinary rains. Would not the owners of the latter be liable? Or take a case of flowing, which occurs only once in ten years; would the long intervals between the injuries, exempt the owner of the dam from his liability to pay damages?

They also cited the following authorities: *Calais* v. *Dyer*, 7 *Greenl.* 155; *Commonwealth* v. *Stevens*, 10 *Pick.* 247.

*Evans*, for the defendants, cited 3 *Wood. Lec.* 203; *Salem Bank* v. *Gloucester Bank*, 17 *Mass.* 31; *Maxwell* v. *Pike*, 2 *Greenl.* 8.

WESTON C. J. delivered the opinion of the Court.

The jury have found that the head of water, raised by the defendants' dam, was not, at the period complained of, high enough to flow the plaintiffs' bridge, or to do damage thereto. Its erection then was a lawful act, not in itself calculated to do any injury to the plaintiffs. Their loss was occasioned, as the jury have found, by great rains or by the violence of the wind. If the dam had not raised the water to a certain height, the rain or the wind superadded might not have done the damage. It may have been one then of a series of causes, to which the injury may be indirectly ascribed. Their connection, however, was fortuitous, and resulted from an extraordinary and unusual state of things. Neither the rain nor the wind was caused by the dam. The bridge had continued unimpaired for a series of years, while the dam was higher than it was, when the bridge was carried away. Such an event could not therefore have been reasonably calculated upon or foreseen.

It would be carrying the doctrine of liability to a most unreasonable length, to run up a succession of causes, and hold each responsible for what followed, especially where the connection was casual and unexpected, as it was here, and where that which is attempted to be charged, was in itself innocent. The law gives no encourgement to speculations of this sort. It rejects them at once. Hence the legal maxim, *causa propinqua non*

*remota, spectatur. Salem Bank* v. *Gloucester Bank,* 17 *Mass.* 31; *Walker* v. *Maitland,* 5 *Barn. & Ald.* 171. This principle has been extensively applied in insurance causes, 3 *Starkie,* 1164, and the cases there cited. And it is of great practical value, in settling the rights and liabilities of contending parties. Were it departed from, it would open a field of litigation, which might unexpectedly bring ruin upon persons engaged in lawful pursuits.

If there had been no dam, the injury might not have happened; but the defendants had a right to erect it, and that without being held answerable for remote and unforeseen consequences.

*Thompson* v. *Crocker et al.* 9 *Pick.* 59, cited for the plaintiffs, was brought to recover damages, occasioned, as was alleged, by the defendants' dam, whereby water was caused to flow back upon the wheels of the plaintiff's mills. *Morton J.* instructed the jury, that for any damage to be inferred "from the principle, that any obstruction of the water below, would prevent it from passing from the plaintiff's mill, so readily as it would without such obstruction, the defendants were not answerable." Exception was taken by the defendants to the direction of the Judge upon another point, but the Court held the instruction of the Judge, upon the question of damages, to have been correct.

The opinion of the Court is, that the cause was properly submitted to the jury by the presiding Judge, at the trial.

*Judgment on the verdict.*