FRANK PRUNTY et al., *Appellants*, V. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellee*.

No. 17,638.

SYLLABUS BY THE COURT.

NUISANCE—*Railroad Embankment—Pile Bridge.* A railway company was sued by adjoining landowners to abate and enjoin as a nuisance the maintenance of a railroad embankment with a pile bridge therein, with an opening thereunder through which surface water collected by such embankment was cast upon plaintiffs' lands. It was not alleged in the petition nor was there any proof that the railroad was negligently or unskillfully constructed, but it appears from all the evidence that the embankment and the opening therein were built and maintained in the usual and ordinary manner in which railroads are constructed across lands of the character in question, and that the interruption and diversion of the surface water is merely one of the ordinary incidents of railroad construction. *Held*, following *Mo. Pac. Rly. Co. v. Renfro*, 52 Kan. 237, 34 Pac. 802, that the action can not be maintained.

Appeal from Wilson district court. Opinion filed November 9, 1912. Affirmed.

*B. F. Carter*, of Kansas City, Mo., for the appellants.

*William R. Smith, Owen J. Wood*, and *Alfred A. Scott*, all of Topeka, and *John J. Jones*, of Chanute, for the appellee.

The opinion of the court was delivered by

PORTER, J.: Appellants brought this action praying for the abatement of a nuisance and for an injunction against the appellee from maintaining the same. The court found in favor of the railway company, and gave judgment against appellants for costs. The appellee owns and operates a line of railroad running in a southeasterly direction from the town of Benedict, in Wilson county, extending for about one mile across the river bottom where it crosses the Ver-

digris river.  On the southeast side of the right of way is a public road 40 feet in width, and immediately adjoining this highway is the appellants' land consisting of about 700 acres used for farming purposes.  From the town of Benedict to where the railroad crosses the Verdigris river the track is laid upon an embankment averaging from 10 to 15 feet in height.  From Benedict the river runs in a southeasterly direction and for about one mile is parallel to the railroad and about one-fourth of a mile distant therefrom.  The land traversed by the railroad is low bottom land which drains to the southeast.  The petition alleged that the surface water from rain and snow falling upon the land immediately west of the railroad gathers behind the railway embankment, sometimes to the depth of from 10 to 12 feet; that sometime after the railroad was built in 1887 a small opening about 4 or 5 feet wide was made in the embankment opposite appellants' land; that afterwards, in 1905, the entire embankment from Benedict to the river was raised by the appellees and the opening made larger; that in July, 1909, the railway company with teams and scrapers completed the opening to the width of about 160 feet.  It was alleged that the effect of the embankment is to collect the surface water in a body and cast it through the opening with great force upon appellants' land, thereby washing away the soil to a great depth, covering up growing crops, destroying trees, cutting ditches and watercourses through the farm land, to the great and irreparable injury of appellants.

The case was submitted to the court upon the appellants' testimony, no evidence having been offered by the appellee.

Appellants' contentions are  (1) that the judgment is against the weight of the evidence;  (2) that it is actionable *per se* for a railroad company to collect and cast surface water upon the lands of an adjoining proprietor.  We find no difficulty in reaching the con-

clusion that there was an abundance of testimony to support the judgment. It appears from the evidence that when the railroad was constructed in 1887 the grade was from one to four feet above the level of the surface. There was a natural depression near where the opening complained of is located. In 1889 the track was raised about three feet across the river bottom and a 70-foot pile bridge was put in. The surface water continuing to cause trouble, the grade in 1905 was again raised about three feet and the width of the opening was increased to 98 feet in length, and in 1909 the opening was increased to 154 feet. These figures are taken from the counter abstract and appear to be conceded as correct. While several witnesses who had been familiar with the situation from the time the railroad was first constructed testified to the effect that as frequently as from two to four times each year a great volume of surface water collects on the westerly side of the embankment and is discharged through the opening upon appellants' land, there is no testimony, nor is there in the petition any averment, that the railroad was constructed in a negligent or careless manner. On the contrary it appears from the evidence beyond cavil that it was built and has been maintained in the usual and ordinary manner in which railroads are constructed in similar situations. A witness for appellee who owned land on the westerly side of the railroad adjoining the opening testified in substance that if the opening were closed and no way were provided for carrying off the surface water collected there "it would simply take out the road."

The failure of appellants to produce any evidence to show that the collecting and casting of the surface water complained of was caused by the negligent or unskillful construction of the railroad by the appellee compelled a judgment against them. (*Mo. Pac. Rly. Co. v. Renfro,* 52 Kan. 237, 34 Pac. 802; *A. T. & S. F. Rld. Co. v. Hammer,* 22 Kan. 763.) The Renfro case

affirmed the rule of the common law in respect to the flow of surface water as declared in former cases cited in the opinion, and established firmly the rule that in the absence of negligence or unskillfulness in the construction of its road a railway company "will not be liable to an adjoining landowner for injuries from the overflow of surface water occasioned by the obstruction of the roadbed." (Syl. ¶ 2.) ' The question was exhaustively considered in all its aspects in that opinion, and it is not deemed necessary at this time to review the question or to consider cases from other courts where the rule of the civil law obtains or some local statute controls. It was said in the opinion in the Renfro case that the petition would have been demurrable if it had not alleged that the railway was constructed in a negligent or unskillful manner. It appearing from the evidence that the ditches complained of were mere incidents to and necessary for the usual, ordinary and proper construction of the road, this court declared the law to be that no liability rested upon the railway company for injury resulting from surface water cast or collected upon adjoining land by the construction of the ditches. The opinion (p. 243) cites with approval the following language used by the Dakota court in the case of *Hannaher v. St. Paul, M. & M. R. Co.,* 5 Dak. 1, 37 N. W. 717, that seems to apply with particular force to the facts shown by the record in the present case:

"If, by such usual and ordinary construction of its road, the surface of the earth was necessarily changed, and the currents of the surface water were interrupted and diverted, it was one of those ordinary incidents of railroad construction which might have been reasonably expected to have resulted from such work, and one that plaintiffs themselves were bound to have guarded against and to have used such precautions as were in their power to remedy. Any other rule would require railroad companies in level countries to build their roads upon elevated trestles, or encounter the

hazard of some disturbance of surface elements."
(p. 24.)

In *A. T. & S. F. Rld. Co. v. Hammer,* 22 Kan. 763,
it was ruled in the syllabus:

"The simple fact that the owner of one tract of land
raises an embankment upon it which prevents the surface water falling and running upon the land of an
adjoining owner from running off said land, and
causes it to accumulate thereon to its damage, gives
to the latter no cause of action against the former; nor
is the rule changed by the fact that the former is a railroad corporation, and its embankment raised for the
purpose of a railroad track, nor by the fact that a culvert could have been made under said embankment
sufficient to have afforded an outlet for all such surface water."

It is apparent that the trial court concluded from
the evidence that the embankment and opening thereunder which appellants complain of as constituting a
nuisance *per se* are merely incidental and necessary
to the proper construction of appellee's road in the
usual and ordinary manner in which railroads are
constructed and maintained. In the language of the
Dakota court, *supra,* "Any other rule would require
railroad companies in level countries to build their
roads upon elevated trestles, or encounter the hazard
of some disturbance of surface elements." (p. 24.)

It is suggested by the appellee that since the record
shows that at the time it acquired its right of way for
the construction of its road the lands on both sides of
the right of way where the opening complained of is
maintained belonged to a single proprietor; that the
relief which appellants seek, if granted, would require
a court of equity to enter a decree defeating the very
purpose and intention which the railway company and
appellants' predecessors in title had in mind when the
transaction occurred whereby the railroad company
acquired its right of way across the lands. And this is
true for the reason that the interruption and diversion

of the surface waters which is complained of is shown
to be merely one of the ordinary incidents of railroad
construction and such as might have been reasonably
expected to have resulted therefrom. (*Hannaher v. St.
Paul, M. & M. R. Co.,* 5 Dak. 1, 37 N. W. 717.)

The judgment is affirmed.