HOFFMAN *et als.* v. TUOLUMNE COUNTY WATER COMPANY.

In an action for damages for breaking defendants' dam and flooding the plaintiffs' mining-claim, where the complaint is in one count, and charges that "the defendants' said reservoir, by reason of some defect in its construction, insufficiency for the purpose for which it was constructed, or carelessness and mismanagement on the part of the said defendants, broke away," etc. : *Held,* that the complaint is sufficient.
Whether such negligence arose from the want of care in constructing the dam, or want of care in letting off the water, is not sufficiently material, under our system of pleading, to require separate counts.
In such a case, where the Court instructed the jury "that if they believe that the dam was improperly or inartificially constructed, or that defendants could have constructed it in a better or more substantial manner so as to prevent its breaking, then they are liable:" *Held,* that such charge is too broad, and the Court erred in giving the same. The question is not what the plaintiffs could have done, but what discreet or prudent men should do, or ordinarily do, in such cases where their own interests are to be affected.
The mere fact that the rock upon which the timbers of the dam lay presented outwardly a solid appearance, etc., does not necessarily show due diligence in making it a foundation, since many other circumstances, such as the knowledge by the defendants, or the builder, of the character or qualities of such rock, or a knowledge of it from testing it, etc., might still show it was unsafe for this purpose.

APPEAL from the District Court of the Fifth Judicial District, County of Tuolumne.

This was an action, brought by E. Hoffman, C. Gatch, K. Kuas, H. Helderf, F. Brown, and C. Verhoof, copartners in the business of mining, against the defendants, who were an incorporated company, to recover damages for the breaking of defendants'

dam and flooding the plaintiffs' mining-claim. The plaintiffs' complaint contains one count, and is in substance as follows:

On the 12th day of July, A. D. 1857, plaintiffs were and still are the owners of a valuable mining-claim, situated, etc., upon which they had bestowed great labor in putting the same in working order, and incurred large expense in the purchase of tools, etc., for the purpose of extracting the gold therefrom. At the same time, defendants were engaged in furnishing water to miners and others, by means of a ditch or canal, and they were the owners of a reservoir situated on the South Fork of Stanislaus, etc., wherein they collected a large body of water, etc., which water would otherwise have flowed down the channel of the stream.

And the said plaintiffs aver that afterwards, to wit, on etc., "they being then and there engaged in the prosecution of their said work as aforesaid, the defendants' said reservoir, by reason of some defect in its construction, insufficiency for the purpose for which it was constructed, or carelessness and mismanagement on the part of the said defendants, broke away, discharging an immense and unusual body of water, which they had collected and backed up in said reservoir, which said water, so discharged as aforesaid, flowed in and upon plaintiffs' said claim, filling the same with great quantities of earth, stone, and rubbish, and carrying off and destroying the lumber, tools," etc., used by plaintiffs in working and mining the same, etc. The complaint claims damage in the sum of $1200.

The defendants demurred to this complaint, on the ground that several causes of action had been improperly united, to wit, defect in the construction of the reservoir, insufficiency for the purposes for which it was constructed, or carelessness and mismanagement on the part of the defendants. Defendants at the same time answered by general denial of the allegations of the complaint. The Court overruled the demurrer, and defendants excepted.

The cause was tried before a jury, and the Court instructed the jury as follows:

"1. That if they believe the break was caused by the carelessness or negligence of defendants, they are liable in damages.

"2. That if they believe that the dam was improperly or inartificially constructed, or that defendants could have constructed it in a better or more substantial manner, so as to prevent its breaking, then they were liable."

Defendants' counsel excepted to the charge of the Court, and requested the Court to charge the jury as follows:

"That if they believe, from the evidence, that the rocks upon which the dam was placed were of such a character as partially to decompose by the action of water, and that fact was not perceptible outwardly, with reasonable care, but such rocks

apparently formed a solid and secure foundation for the timbers of the dam, and the same was constructed properly in other respects, then the placing the timbers upon such foundation, though it afterwards proved insecure, was not negligence in law."

Which instruction the Court refused to give, and defendants excepted. The jury returned a verdict for the plaintiffs, and assessed the damages at $1000, and judgment was entered thereon. Defendants moved for a new trial, which was denied, and they appealed to this Court.

*Barber* for Appellants.

The complaint contains a single count, and sets forth that "defendants' said reservoir, by reason of some defect in its construction, insufficiency for the purposes for which it was constructed, or carelessness and mismanagement on the part of said defendants, broke and flooded plaintiffs' claim."

To this complaint a demurrer was interposed, on the ground that several causes of action had been improperly united therein without being separately stated, to wit :

1. Defect in the construction of the reservoir.

2. Carelessness and mismanagement on the part of plaintiffs.

These are two distinct causes of action, and by section sixty-four of the Practice Act, " shall be separately stated."

These distinct causes of action having been joined in one count, the complaint is demurrable, under section forty, subdivision five of the Practice Act, that " several causes of action have been improperly united."

This question has been already decided under the New York Code. Durkee *v.* Saratoga R. R., 4 Howard, 226 ; 2 Code Rep., 145 ; Getty *v.* Hudson R. R. Co., 8 Howard, 177 ; 9 Howard, 98, 342.

That these allegations constitute distinct causes of action is easily ascertained.

Plaintiffs, on the trial, might move either negligence in the construction of the dam, which would constitute one cause of action, or mismanagement or carelessness in attending to it, which would constitute another, and in either case he would recover ; showing clearly that the allegations constitute separate and distinct causes of action, on proving either of which, plaintiffs would have their remedy, without reference to the other.

Take another test—suppose plaintiffs had declared for the breakage of the reservoir, solely on account of defective construction, and on the trial it had been proven that the damage did not arise from any defective construction of the dam, but from mismanagement on the part of those attending it, could plaintiffs, under that evidence, have recovered, when they alleged only a defective construction as the cause of damage, and *vice versa*. Fitzimmons *v.* Inglis, 5 Taunton, 534.

Defendants had the right to .have each issue presented singly. Plaintiffs have no right to say in one count, you are guilty of constructing your dam improperly; or, if it is constructed properly, you are guilty of carelessness in its management.

He can not say in the same count you damaged me thus, or thus; such a statement of different causes of action is allowed by no rules of pleading.

The uniting of several causes of action in one count was always good ground of demurrer.

The Court, in their second instruction, say: " That if they believe that the dam was improperly or inartificially constructed, or that defendants could have constructed it in a better or more substantial manner, so as to prevent its breaking, then they were liable."

We submit that both branches of this charge were erroneous:

1. It mattered not at all whether the dam was "inartificially" constructed—the question was, whether it was securely constructed; if so, it was a question of no importance whether its construction was "inartificially" or not; "inartificially" is an obscure term, of great latitude, and tending to lead the jury from the true issue. A fort might be very inartificially constructed, yet protect the troops within as well as one constructed on the most "artificial" principles.

No brief in the record for Respondents.

BALDWIN, J., delivered the opinion of the Court—TERRY, C. J., and FIELD, J., concurring.

At the first presentation of the questions on the demurrer to the complaint, we were inclined to think it well taken; but on reflection, we think that it is not. The complaint is for negligence, by defendants insufficiently building a dam across a watercourse, or carelessness and mismanagement on the part of the defendants, whereby the dam broke and injured the mining-claims of plaintiffs below. It will be seen that the *gravamen* of the action is not for building the dam. That they had a right to do, and it seems to be conceded that, if the work had been constructed as designed, no injury would have followed. Whether this negligence arose from the want of care in constructing the dam, or want of care in letting off the water, we do not think sufficiently material, under our system of pleading, to require separate counts. The main thing is the neglect of the defendants in respect to their own property, and while it is important to have the pleadings drawn with precision, it would probably lead to more trouble than it would save to require so much exactness as is claimed in this case. We presume if a bailee were charged with negligence in regard to an article bailed, that it would not be necessary to state in different counts several acts

of negligence, as not keeping the property secure, losing it, and the like. The demurrer, therefore, was properly overruled.

The main question is on the propriety of giving the second instruction, at the instance of the plaintiff, in these words: "If the jury believe that the dam was improperly or inartificially constructed, or that defendants could have constructed it in a better or more substantial manner, so as to prevent its breaking, then they were liable." Our decisions upon the subject of riparian and mining rights, have gone upon the theory that the appropriator was the owner. The question here is not whether the ditch-owner has the right to build a dam, the natural consequence of the construction of which is to injure a mining-claim, or the adjacent property of another—at any rate, without making compensation to the person so injured. This case concedes that the mere fact of construction did not produce the injury; but that the negligent or improper exercise of a right, lawful when properly exercised, has caused the damage, and given the cause of action. The general rule is, that every man may do as he chooses with his own property, provided he does not injure another's. But there is another rule as well established, which is, that a man must so use his own property as not to injure his neighbor's. This last rule, however, does not make a man responsible for every injury which may arise to another from the use which the first may make of his property. It would be an intolerable hardship to hold a man responsible for unavoidable accidents which may occur to his property by fires or casualties, or acts beyond his control, though others are likewise injured. The degree of negligence which will subject the owner to liability to third persons in such cases has been settled by repeated decisions. In Angell on Water-Courses, (380, § 336,) it is said: "The degree of care which a party who constructs a dam across a stream of water is bound to use, is in proportion to the extent of the injury which will be likely to result to third persons, provided it should prove insufficient. It is not enough that the dam is sufficient to resist ordinary floods; for if the stream is occasionally subject to great freshets, those must likewise be guarded against; and the measure of care required in such cases is that which a discreet person would use if the whole risk were his own. In a case where the plaintiff gave evidence that the defendant was the possessor of a saw-mill and dam above the plaintiff's works, and, by means of the dam, had raised a large body of water, about a mile in length, and varying in width from a few rods to half a mile; and that the dam gave way and let down the whole body of water upon the plaintiff's works below, and which swept away and destroyed his property to a large amount; and at the time the dam gave way there had been no unusual fall of rain, the Court held as follows: 'The defendant was subject to the maxim, *Sic utere tuo ut alienum non lædas;* and

27

to comply with the requisition of the common law, it was the duty of the defendant to have used *ordinary* care and diligence in making repairs to his dam, or in drawing off the water from his pond, to prevent injuries to the plaintiff's furnace. If the defendant did not use this care and diligence, he was guilty of negligence, and liable for consequential damages; but he was not liable for *inevitable accident.*' "

See, also, Bagley *v.* Mayor, etc., of New York, (3 Hill, 531;) Mayor, etc., of New York, *v.* Bailey, (3 Denio, 433;) Lapham *v.* Curtis, (5 Vermont, 371.)

And if the dam were to break without any negligence, or through inevitable accident, it would be the duty of the party to repair it and stop the injury as soon as practicable.

Applying these principles to the instructions, it will be seen that the charge is too broad. It will be perceived that the question is not what the plaintiffs could have done, but what discreet and prudent men should do, or ordinarily do, in such cases, where their own interests are to be affected, and all the risk their own.

We are not satisfied that the Court erred in refusing to give the defendants' charge; at least without some qualification; for the mere fact that the rock presented outwardly a solid appearance, etc., does not necessarily show due diligence in making it a foundation, since many other circumstances, such as the knowledge by the defendants, or the builder, of the character or qualities of such rock, or a knowledge of it from testing it, etc., might still show it was unsafe for this purpose. But it is not necessary to express a decided opinion upon this point, as we have indicated the correct rule of liability upon which the case may be properly put to the jury upon another trial.

Judgment reversed, and cause remanded.