[Nos. 13833, 14453.  In Bank. — July 12, 1892.]

GEORGE  J.  SMITH,  RESPONDENT,  v.  W.  FRANK
WHITTIER ET AL., APPELLANTS.

STIPULATION OF ATTORNEYS — CONSTRUCTION OF CODE — WRITTEN AGREE-
MENT NOT FILED NOR ENTERED UPON MINUTES. — Section 283 of the
Code of Civil Procedure, which provides that an attorney can bind his
client in an action, by his agreement, "filed with the clerk, or entered
upon the minutes of the court, and not otherwise," was not intended to
enlarge or abridge the authority of the attorney, but only to prescribe
the manner of its exercise, and does not require a construction, that in
no instance shall an agreement which the attorney may make in behalf
of his client be binding, unless entered in the minutes of the court, or
filed with the clerk.  Its provisions refer to executory agreements, and
not to those which have been wholly or in part executed.

ID. — STIPULATION ACTED UPON WITHOUT FILING — ESTOPPEL. — If the at-
torneys in an action have acted upon a written agreement, to such an ex-
tent that it would be inequitable not to recognize its binding effect, the
court will not allow the agreement to be repudiated, upon the ground
that it has not been filed with the clerk.

ID. — EFFECT OF SUBSTITUTION OF ATTORNEYS — CONTINUING FORCE OF
STIPULATION. — The parties to an action cannot be relieved from an ob-
ligation created by their attorneys, by the mere fact that another attor-
ney is substituted in the place of the former attorneys who created the
obligation.  An attorney who is substituted for another in a cause
steps into the place of his predecessor, and stands, with reference to the
case and to the other party, precisely as did his predecessor, and can re-
pudiate or be relieved from an agreement that had been made by him,
only to the same extent and in the same manner as could his predeces-
sor.

ID. — STIPULATION AS TO TESTIMONY — CONTINUING CONSENT — DEATH OF
WITNESS — IRREVOCABLE AGREEMENT — EFFECT OF SUBSEQUENT FIL-
ING. — The execution of a stipulation between the attorneys of the
parties to a cause, that the testimony of a witness taken in another action
should be read and used in the trial of the cause in which the stipulation
was entered into, is a continuing consent on the part of the attorneys
that the stipulation may be filed at any time thereafter, unless they
in some direct and express mode signify their withdrawal of such
consent; and the death of the witness before such withdrawal renders the
stipulation irrevocable; and the filing of the stipulation thereafter has
the effect to operate and become binding upon the parties as from its
date.

NEGLIGENCE — FALLING OF ELEVATOR — EVIDENCE — INSTRUCTIONS FROM
BUILDERS OF ELEVATOR TO OWNERS. — In an action for injuries caused
by the falling of an elevator, where the main issue is whether the de-
fendants had been negligent in the mode in which they had run the ele-
vator at the time of the accident, testimony as to directions given to one
of the defendants, from those who put the elevator in the building, as to
how the elevator should be handled or used, and as to what the effect

would be if he did not carry out those instructions, is relevant, material, and competent upon the issue of negligence.

Id. — Negligence Relative to Circumstances — Situation and Knowledge of Parties. — Negligence is opposed to diligence or carefulness, and is never absolute or intrinsic, but is always relative to some circumstance of time, place, or person, and is to be determined by reference to the situation and knowledge of the parties, and all the attendant circumstances; and what would be extreme care under one condition of knowledge and one state of circumstances would be gross negligence with different knowledge and in changed circumstances.

Id. — Knowledge of Facts Showing Duty — Care in Control of Superior Force. — Negligence being the violation or disregard of some duty or obligation which one owes to another, a knowledge of the facts out of which the duty springs is an essential element in determining whether there has been any negligence; and the amount of care requisite to be exercised in the use of a mechanical or natural agency, whose superior force demands skill in its management to prevent its getting beyond ordinary control, depends upon the extent to which the knowledge goes.

Id. — Evidence of Notice — Testimony of Defendant — Cross-examination of Informant — Hearsay. — Whenever the knowledge of a defendant charged with negligence is a factor in determining the question of negligence, it may be shown by his own testimony that he received notice of facts which would constitute negligence, and it is no objection that the notice was not given under the sanction of an oath, or that the opposite party had no opportunity of cross-examining the informant, and proof of such notice is not within the rule excluding hearsay.

Evidence — Declarations — Hearsay. — Where the fact sought to be established is, that certain words were spoken, without reference to the truth or falsity of the words, whether by a party to the action as an admission of a fact, or to him as a notice, or under such circumstances as to require action or reply from him, the testimony of any person who heard the statement is original evidence, and not hearsay.

New Trial — Misconduct of Jury — Counter-affidavits — Excusable Neglect — Discretion. — Where one of the grounds of a motion for a new trial is misconduct of the jury, and counter-affidavits directly responsive to the affidavits in support of the motion are prepared, but by inadvertence and excusable neglect are not filed until more than ten days thereafter, it is within the discretion of the court to permit such counter-affidavits to be read, upon a proper showing of excusable neglect.

Id. — Time for Counter-affidavits not Jurisdictional. — The time within which counter-affidavits on a motion for a new trial may be filed is not jurisdictional, but is only a rule of procedure subject to the equitable control of the court.

Rules of Procedure — Object and Construction. — Rules of procedure, whether statutory or made by the court, are intended to facilitate courts in doing justice between the parties, and when not jurisdictional are intended for the convenience of courts and litigants, and should be liberally construed.

Evidence — Admission — Willingness to Settle — Offer of Compromise. — The statement of a party against whom a claim is made, that he

is willing to settle the claim, when not connected with an offer of compromise, may be proved as an admission against interest. The rule which excludes offers of compromise does not apply to statements made by a party which are in no wise connected with any attempt at a compromise, whether made to a stranger or to a co-defendant.

VERDICT — DAMAGES NOT EXCESSIVE. — A verdict for thirty thousand dollars damages held not excessive under the facts of this case.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court in this case, and in the case of *Treadwell* v. *Whittier*, 80 Cal. 574.

*D. M. Delmas*, for Appellants.

It was error to allow the deposition of Bangs to be read in evidence, as a client is not bound by a stipulation filed after the attorney who has signed it has ceased to be his attorney, for the stipulation, to be binding upon the client, must be both signed and filed while the attorney is still acting as such. (Code Civ. Proc., sec. 283, subd. 1; *Borkheim* v. *N. B. & M. Co.*, 38 Cal. 623; *Merritt* v. *Wilcox*, 52 Cal. 238; *Simpson* v. *Budd*, 91 Cal. 488.) It was error to permit the witness Ravekes to testify to the directions which had been given as to the running of the elevator, as the evidence was irrelevant and immaterial, and was incompetent as hearsay. (*Howard* v. *Savannah etc. R'y Co.*, 84 Ga. 711; *Fisher* v. *Southern Pacific R. R. Co.*, 89 Cal. 399.) The court erred in admitting the declarations or testimony of Ravekes as to the settlement of the case. (*Dennis* v. *Belt*, 30 Cal. 247; *Duff* v. *Duff*, 71 Cal. 513; *Gommersall* v. *Crew*, 10 N. Y. Sup. Ct. 231; 2 Wharton on Evidence, sec. 1090; *Marsh* v. *Gold*, 2 Pick. 285; *Gerrish* v. *Sweetser*, 4 Pick. 374.) It was error for the court to permit counter-affidavits to be filed and read to the defendant's affidavit on motion for a new trial, as they were not filed or served within ten days after the filing and service of the moving affidavits. The court had no power to extend the ten-day

limit. (Code Civ. Proc., secs. 659, 1054.) It was no more in the power of the court to permit those affidavits to be filed after the ten days had expired than it would be in the power of the court to permit notice of motion for new trial to be filed ten days after the time that it should be filed, or a notice of appeal from the judgment after a year has expired. (*Roush* v. *Van Hagen*, 17 Cal. 121; Hayne on New Trial and Appeal, sec. 13; *Clark* v. *Crane*, 57 Cal. 632; *Leech* v. *West*, 2 Cal. 98; *Hegeler* v. *Henckell*, 27 Cal. 494.) The powers granted to the court to relieve parties from their mistake or excusable negligence do not extend to cases of this character, as will be seen by reference to section 473 of the Code of Civil Procedure. Where, as in the case at bar, the conduct of the defendant has not justified the awarding of punitory damages, the damages are excessive if more than actually compensatory. (*Union Pac. R. R. Co.* v. *Milliken*, 8 Kan. 647.) For the purpose of reviewing verdicts and obtaining a practical estimate of the amount of damages actually awarded, courts have frequently compared the earning capacity of the person injured with the amount of an annuity which the damages would purchase; and when the two amounts have been found to be notably disproportionate, the verdict has been set aside as excessive. (*Houston R. R. Co.* v. *Willie*, 53 Tex. 318; 37 Am. Rep. 756; *Chicago R. R. Co.* v. *Jackson*, 55 Ill. 497; 8 Am. Rep. 661; *Chicago* v. *Hughes*, 87 Ill. 94; *Union Pac. R. R. Co.* v. *Milliken*, 8 Kan. 647; *Cook* v. *Clay St. R. R.*, 60 Cal. 604.) But it is further submitted that a comparison of the verdict herein with verdicts awarded by other juries in similar cases will afford us the most reliable test, because, by ascertaining what has been the result of the average good sense of other jurymen, we may arrive at some estimate of what ought in this case to have been the result had this jury relied solely on its good sense and sound discretion. (*Jennings* v. *Van Schaick*, 13 Daly, 7; *Louisville etc. R. R. Co.* v. *Fox*, 11 Bush, 495.) Accordingly, it is submitted that the following table, showing the verdicts

awarded by other juries similarly situated, furnishes a standard of average reason, discretion, and judgment, by means of which this court may test the verdict herein without substituting its own reason or discretion for that of the jury: $2,000, *Waldron* v. *St. Paul*, 33 Minn. 87; $3,500, *Klutts* v. *Railroad Co.*, 75 Mo. 642; $4,000, *Hanson* v. *Railroad Co.*, 62 Me. 84; $5,000, *Chicago* v. *Langlass*, 66 Ill. 361; $5,000, *Chicago* v. *Mumford*, 97 Ill. 560; $5,000, *Wardle* v. *Railroad Co.*, 35 La. Ann. 202; $7,500, *Chicago* v. *Herz*, 87 Ill. 541; $8,000, *Draper* v. *Baker*, 61 Wis. 450; 50 Am. Rep. 143; $8,958, *Illinois Cent. R. R.* v. *Parks*, 88 Ill. 373; $10,000, *Carthage Turnpike Co.* v. *Andrews*, 102 Ind. 138; 52 Am. Rep. 653; $10,000, *Dœlzell* v. *Long Island R. R.*, 53 Hun, 633; $8,527, *Stouter* v. *Manhattan R. R.*, 6 N. Y. Sup. Ct. 163; $9,500, *Knapp* v. *Sioux etc. R. R. Co.*, 71 Iowa, 41; $5,000, *Texas Pac. R'y* v. *Davidson*, 68 Tex. 370; $10,000, *Osborn* v. *City of Detroit*, 32 Fed. Rep. 36; $8,000, *Cummings* v. *Nat. Furnace Co.*, 60 Wis. 603; $8,000, *Atchison R. R.* v. *Moore*, 31 Kan. 197; $7,000, *Wedekind* v. *Southern Pacific R'y Co.*, 20 Nev. 292; $9,000, *Griffith* v. *Missouri Pacific R. R.*, 98 Mo. 168; $6,000, *East St. Louis R. R.* v. *Frazier*, 26 Ill. App. 437; $6,500, *Dallas etc. R'y* v. *Able*, 72 Tex. 150; $4,000, *Missouri Pacific R'y Co.* v. *Shuford*, 72 Tex. 165; $20,000, *Walker* v. *Erie R'y Co.*, 63 Barb. 260; $16,500, *Boyce* v. *California Stage Co.*, 25 Cal. 460; $25,000, *Ehrgott* v. *Mayor*, 96 N. Y. 266; 48 Am. Rep. 622; $10,000, *Belair* v. *Chicago etc. R. R.*, 43 Iowa, 662; $9,000, *Deppe* v. *Chicago etc. R. R.*, 38 Iowa, 592; $8,000, *Oties* v. *Cowles*, 7 N. Y. Sup. Ct. 251; $12,000, *Texas R'y* v. *Douglass*, 13 Tex. 325; $15,000, *Solen* v. *V. & T. R'y*, 13 Nev. 137; $8,250, *Reed* v. *Chicago*, 74 Iowa, 188; $10,000, *Columbia R. R. Co.* v. *Hawthorn*, 3 Wash. Ter. 353; $7,000, *Marion* v. *Railroad Co.*, 64 Iowa, 568. In the following cases, the courts have considered the damages awarded to be sufficient evidence of the existence of passion or prejudice in the minds of the jury: $9,250, *Sioux City etc. R. R. Co.* v. *Finlayson*, 16 Neb. 578; 49 Am. Rep. 724; $24,000, *Pence* v. *Railroad*, 79 Iowa, 389;

$30,000, *Heddles* v. *Chicago etc. R. R. Co.*, 74 Wis. 239; $35,000, *Louisville etc. R. R. Co.* v. *Fox*, 11 Bush, 495; $15,000, *Collins* v. *Council Bluffs*, 32 Iowa, 432.

*Lloyd & Wood, Lloyd, Newlands & Wood,* and *Garber & Bishop,* for Respondent.

The counter-affidavits were filed in time. The order of the court extending the time was of itself legal and sufficient, upon any fair and proper construction of the code. Further, if this were otherwise, the court, on the showing made, properly granted the motion. And even unopposed by the counter-affidavits, the showing was insufficient. (See *Spottiswood* v. *Weir*, 80 Cal. 448.) The verdict was not excessive, should not have been set aside by the trial court, and cannot, on that ground, be here set aside. In the following cases large verdicts were upheld: $14,000, *Gale* v. *N. Y. Cent. R. R.*, 13 Hun, 1; $24,500, *Sloan* v. *N. Y. Cent. R. R.*, 1 Hun, 540; $22,250, *Shaw* v. *Boston etc.*, 8 Gray, 45, 85; $30,000, *Harold* v. *N. Y. etc.*, 24 Hun, 186, aff'd 89 N. Y. 628; $25,000, *Alberti* v. *N. Y. etc. R. R.*, 43 Hun, 422; $25,000, *Chapin* v. *New Orleans etc.*, 17 La. Ann. 19; $25,000, *Chicago etc. R. R. Co.* v. *Holland*, 18 Bradw. 418; $11,000, *Jordan* v. *N. Y. etc. R. R.*, 9 N. Y. Sup. Ct. 506; $20,000, *International etc.* v. *Brazzil*, 78 Tex. 314; $18,000, *Murray* v. *Brooklyn R. R.*, 7 N. Y. Sup. Ct. 900; $24,000, *Pence* v. *Chicago etc. R. R.*, 79 Iowa, 389; $9,500, *Knapp* v. *Sioux etc. R. R.*, 71 Iowa, 43; $21,000, *Caldwell* v. *N. J. etc. R. R.*, 47 N. Y. 297; $10,000, *Robinson* v. *C. P. R. R.*, 48 Cal. 410; $45,000, *Pym* v. *Great Northern etc.*, 110 Eng. Com. L. 759; $40,133, *Hall* v. *Chicago*, 46 Minn. 439; $25,000, *Ehrmann* v. *Brooklyn*, 14 N. Y. Sup. Ct. 336; $25,000, *McMarshall* v. *Chicago*, 80 Iowa, 757; 20 Am. St. Rep. 445; $16,000, *C. & A. R. R.* v. *Fisher*, 38 Ill. App. 33. It must be a glaring case indeed of outrageous damages, and all mankind at first blush must think so, to induce a court to grant a new trial for excessive damages. (*Huckle* v. *Money*, 2 Wils. 205. See also *Solen* v. *Virginia and Truckee*, 13 Nev. 138; *Louisville etc. R. R. Co.* v.

*Thompson,* 64 Miss. 584; *Groves* v. *City,* 39 Hun, 11; *Ransom* v. *N. Y. etc.,* 15 N. Y. 416, decided in 1857, and sustaining a verdict of fourteen thousand dollars. Under our statute the verdict cannot be set aside as excessive. The amount is not so wholly disproportioned to the wrong and injury as to be susceptible of no other interpretation than that it was arrived at through passion, prejudice, etc. (*Phelps* v. *Cogswell,* 70 Cal. 202; *M. K. etc. R. R. Co.* v. *Weaver,* 16 Kan. 456, 465, 466. See *Goddard* v. *Grand Trunk,* 57 Me. 226, 227; 2 Am. Rep. 39; *Wabash etc. R. R. Co.* v. *Peyton,* 106 Ill. 539; 46 Am. Rep. 705.) Merely as samples of the infinite number of cases where verdicts larger than this have been sustained, — that is, larger when the relative amount of injury and suffering, etc., is compared and considered, — we may cite: *Ketchum* v. *Railroad,* 38 La. Ann. 778, 779; *Sobieski* v. *St. Paul,* 41 Minn. 169; *Western Union Telegraph* v. *Simpson,* 73 Tex. 422; *Neilon* v. *Marinette,* 75 Wis. 579; *Akersloot* v. *Second Ave.,* 15 N. Y. Sup. Ct. 864; 8 N. Y. Sup. Ct. 926; *Croker* v. *Chicago,* 36 Wis. 678; *Howard Oil Co.* v. *Davis,* 76 Tex. 630; *Murtaugh* v. *New York,* 49 Hun, 458; *Furness* v. *Railroad,* 102 Mo. 438; 22 Am. St. Rep. 781; *Furness* v. *Railroad,* 102 Mo. 669; 22 Am. St. Rep. 800. If any one could say that any rational man of character would not, for the amount awarded, be put in the defendant's position, the damages are not excessive. (*Hallett* v. *Crutchley,* 5 Taunt. 277; 3 Sedgwick on Measure of Damages, 8th ed., sec. 1320; 16 Am. & Eng. Ency. of Law, 585.) That the evidence in this case warranted the jury in allowing large and substantial damages for loss of time, earning capacity, etc., in addition to full compensation for pain, mental anguish, expenses, bodily injury, etc., we cite: *Fisher* v. *Jansen,* 128 Ill. 549; 30 Ill. App. 91; 1 Sedgwick on Measure of Damages, 8th ed., 262; *Feeney* v. *Long Island R. R. Co.,* 116 N. Y. 375; *Chicago* v. *Barnes,* 28 N. E. Rep. 328; *Lincoln* v. *Schenectady,* 23 Wend. 430; *Railroad* v. *Barron,* 5 Wall. 104; *City of Panama,* 101 U. S. 453; *Treadwell* v. *Whittier,* 80 Cal. 575; 13 Am. St. Rep. 175, and cases cited by court and

counsel; *Chicago* v. *Hastings*, 26 N. E. Rep. 594; *Stockton* v. *Chicago*, 26 N. E. Rep. 1095; *Head* v. *Hargrave*, 105 U. S. 45; *Vicksburg R. R. Co.* v. *Putnam*, 118 U. S. 554, and cases cited; *Ballou* v. *Farnum*, 11 Allen, 73; *McMahon* v. *North etc. R. R. Co.*, 39 Md. 441.

HARRISON J.— Action to recover damages for personal injuries caused by the falling of an elevator. The facts out of which the cause of action arose are the same as those which were presented in the case of Treadwell against the same defendants, reported in 80 Cal. 574, the plaintiff and Treadwell having both been passengers on the elevator at the time of the accident. A verdict was rendered in favor of the plaintiff for $30,000, and from the judgment entered thereon, and also from the order of the court denying a new trial, the defendants have appealed to this court.

1. The case of Treadwell was tried in April, 1883, and a verdict rendered in favor of the plaintiff. While the cause was pending in the superior court on a motion for a new trial, the attorneys for the parties to the present action, who were also the attorneys for the respective parties in the Treadwell case, entered into the following stipulation: —

"Stipulated that the testimony of D. A. Bangs, as given and taken down by the phonographic reporter on the trial of the case of John Treadwell against said defendants, W. F. Whittier et al., when written out in longhand, and certified as correct by said reporter, may be read and used in the trial, or in any proceedings in the said case of *George J. Smith* v. *W. F. Whittier et al.*, with like force and effect as if said Bangs was on the stand and testifying in open court, subject only to such objections or exceptions as might be made if said Bangs was testifying in open court in said last-named cause, and also subject to the right of defendants' attorneys to contradict or impeach said Bangs on any matter testified to by him, without first calling his attention

thereto, or making preliminary proof as to such contradictory matter.

"San Francisco, November 1, 1884.

> "McAllister & Bergin,
>> "Attorneys for Defendants.
> "Lloyd & Wood,
>> "Attorneys for Plaintiff."

Before the trial of the present case, the witness Bangs left the state and died; and on the second day of the trial the plaintiff offered to read his testimony in the former case, under the foregoing stipulation. To this the defendants objected, upon the ground that the stipulation had not been filed with the clerk until after McAllister & Bergin had ceased to be the attorneys for the defendants, and therefore was not binding upon the defendants. Mr. Delmas had become the attorney for the defendants in place of McAllister & Bergin prior to the commencement of the trial, but his substitution as such attorney was not made a matter of record until after the trial had begun, and on the same day, about two hours after the filing of the order of substitution, the plaintiff caused the foregoing stipulation to be filed with the clerk.

Section 283 of the Code of Civil Procedure provides: "An attorney and counselor shall have authority, — 1. To bind his client in any of the steps of an action or proceeding by his agreement, filed with the clerk, or entered upon the minutes of the court, and not otherwise."

The evident object of this section is that whenever the attorney shall enter into an agreement for the purpose of binding his client, there shall be such a record thereof as will preclude any question concerning its character or effect, and that the extent of the agreement may be ascertained by the record, — if oral, that it shall be entered in the minutes, and if written, that it shall be filed with the clerk. " It is not intended to enlarge or abridge the authority of the attorney, but only to pre-

scribe the manner of its exercise." (*Preston* v. *Hill*, 50 Cal. 53; 19 Am. Rep. 647.) The section does not require a construction that in no instance shall an agreement which the attorney may make in behalf of his client be binding, unless entered in the minutes of the court or filed with the clerk. Its provisions have reference to executory agreements, and not to those which have been wholly or in part executed; and it was with reference to oral agreements of an executory character that the court said in its opinion in *Borkheim* v. *B. & M. Ins. Co.*, 38 Cal. 628, " of such agreements, therefore, there can be no *specific performance.*" If under the terms of a mutual stipulation, which was only verbal, one party has received the advantage for which he entered into it, or the other party has at his instance given up some right or lost some advantage, so that it would be inequitable for him to insist that the stipulation was invalid, he will not be permitted to repudiate the obligation of his own agreement, upon the ground that it had not been entered in the minutes of the court. (*Himmelmann* v. *Sullivan*, 40 Cal. 125; *Hawes* v. *Clark*, 84 Cal. 272; *People* v. *Stephens*, 52 N. Y. 306.) If the party admits that he made such verbal stipulation, it will be as binding upon him as if it had been entered in the minutes of the court. (*Patterson* v. *Ely*, 19 Cal. 36; *Reese* v. *Mahoney*, 21 Cal. 306.) If, however, the terms of the verbal agreement are disputed, courts refuse to settle such disputes, or to try a collateral issue for the purpose of determining whether any agreement had been made. In *Patterson* v. *Ely*, 19 Cal. 36, the verbal agreement was not entered of record until after the trial had begun, and in *Hawes* v. *Clark*, 84 Cal. 272, although the minutes contained no record of the agreement, the court nevertheless enforced it, notwithstanding the objection upon that ground. The same principles are applicable to the enforcement of a written agreement which has not been filed as to a verbal one which has not been entered in the minutes of the court. If the parties have acted upon such written agreement to such an extent that it would be inequitable not to

recognize its binding effect, as, for example, if a party has obtained under the agreement that in consideration of which the other became bound thereby, or has been relieved of some burden which was the consideration for which it was given, or if the other party has been reasonably led thereby to forego any step which but for the agreement he would have taken, courts will not allow the agreement to be repudiated upon the ground that it had not been filed with the clerk.

The stipulation in the present case was one which was within the authority of McAllister & Bergin, as attorneys for the defendants, to make. It pertained to the conduct of the suit for which they had been employed, and when made, was binding upon the defendants, and remained binding upon them until they should be relieved therefrom. They were not relieved from the obligation created by it by the mere fact that Mr. Delmas had been substituted as their attorney in the place of McAllister & Bergin. An attorney who is substituted for another in a cause has no greater rights than his predecessor, nor is his client's position in the case in in any way changed by such substitution. He steps into the place of his predecessor, and stands, with reference to the case and to the other party, precisely as did his predecessor, and can repudiate or be relieved from an agreement that had been made by him only to the same extent and in the same manner as could his predecessor.

The natural effect of this agreement was to induce the plaintiff to forego the taking of the deposition of Bangs, and the agreement itself, in the absence of any showing in reference thereto, may from its terms be regarded as having been entered into for the mutual benefit and convenience of both parties, inasmuch as Bangs had been fully examined and cross-examined in the trial of the Treadwell case by the same attorneys for the respective parties, and each was by this agreement relieved of the labor and time that would have been required

in taking his deposition for the purpose of re-examining him upon the same subject.

It was not necessary that the agreement should have been filed by the plaintiff immediately upon its execution, under the penalty of not being able to avail himself of it. Its execution by McAllister & Bergin was a continuing consent on their part that it might be filed at any time thereafter, unless they should in some direct and express mode signify their withdrawal of such consent, and upon the death of Bangs before such consent was withdrawn, the position of the plaintiff in reference to having his testimony for use at the trial of the present case became so changed that thereafter the agreement could not have been revoked, or the consent of the attorneys to its filing withdrawn. When it was afterwards filed, the effect of such filing operated and became binding upon the defendants as from its date.

2. At the trial, the defendant Ravekes was called as a witness on behalf of the plaintiff, and was asked whether he had received any directions from those who put the elevator in the building as to how it should be handled or used, and whether anything was said as to what the effect would be if he did not carry out those instructions; and answered that he had received from them instructions to start slowly at first, and always when reaching either floor at which to leave the elevator, to decrease the speed by shutting off the water, and never allow the elevator to stop of its own accord; that otherwise the effect would be to break a portion of the machinery in the basement. These questions were objected to by the defendants, upon the ground that they were "irrelevant and immaterial," and the overruling of their objection is assigned as error. The argument of the appellants upon this assignment is, however, mainly upon the ground that the evidence was *incompetent*, for the reason that it was hearsay.

The evidence given by the witness in answer to the questions was both relevant and material. The main issue between the parties to the action was whether the

defendants had been negligent in the mode in which they had run the elevator at the time of the accident, and upon that issue the plaintiff had the right to introduce any competent evidence that would tend to establish such negligence. Negligence is opposed to diligence or carefulness, and is never absolute or intrinsic, but is always relative to some circumstance of time, place, or person. The definition which is most frequently given is that formulated by Baron Alderson in *Blyth* v. *Birmingham Water Works Co.*, 11 Exch. 784, as "the omission to do something which a reasonable man guided upon those considerations which ordinarily regulate the conduct of human affairs would do, or doing something which a prudent and reasonable man would not do." "It must be determined in all cases by reference to the situation and knowledge of the parties, and all the attendant circumstances. What would be extreme care under one condition of knowledge and one state of circumstances would be gross negligence with different knowledge and in changed circumstances." (*Nitro-Glycerine Case*, 15 Wall. 536.) The Civil Code, section 1714, makes every one responsible "for an injury occasioned to another by his want of ordinary care or skill in the management of his property"; and "ordinary care" is that which every person of ordinary prudence takes of his own concerns, or would employ under similar circumstances. In *Hoffman* v. *Tuolumne Co. Water Co.*, 10 Cal. 413, the test is stated to be, "what discreet and prudent men should do, or ordinarily do, in such cases, where their own interests are to be affected, and all the risk their own."

As negligence is the violation or disregard of some duty or obligation which one owes to another, it is evident that a knowledge of the facts out of which the duty springs is an essential element in determining whether there has been any negligence. In certain relations, such knowledge is conclusively presumed, while in others it devolves upon the party charging the negligence to show that the knowledge existed. Especially is such

knowledge an element in determining the care to be exercised in the use of some mechanical or natural agency, whose superior force demands skill in its management, to prevent its getting beyond ordinary control. The amount of care requisite in such a case depends upon the extent to which the knowledge goes. The mode in which an appliance involving such agency is to be used is as material as the manner in which it is constructed, and if one mode of its use is free from danger and another not, it is relevant and material to show whether the defendant knew how to use that mode which was free from danger, since his knowledge of the proper mode, and his failure to exercise it, would be evidence of negligence. "Facts which were known to him, or by the use of proper diligence would have been known to a prudent man in his place, come into account as part of the circumstances." (Pollock on Torts, 356.) In the case of *Hoffman* v. *Tuolumne Co. Water Co.*, 10 Cal. 413, it was held that the knowledge of the defendants respecting the character of the ground upon which the dam was constructed was an element to be considered in determining whether they had been guilty of negligence in constructing it; and the nitro-glycerine case went upon the proposition that the defendants were ignorant of the proper mode of handling the article. The negligence of the master in the retention of an incompetent servant, or in the use of defective machinery, is frequently shown by evidence that he had been informed of previous negligent acts on the part of the servant, or of the defects in the machinery. (*Malone* v. *Hawley*, 46 Cal. 409.) The negligence of the servant, or the defects in the machinery, must still be shown in the particular case, but the presumption that the master has fulfilled his obligation to select competent servants, or provide suitable machinery, is overcome by proof that such information had been communicated to him. Whenever the knowledge or information of the party charged to have been negligent is a factor in determining such question, it is proper, for the purpose of showing such knowledge or

information, to show that notice was given to him, and that he was informed of the facts which would constitute negligence; and there is no better mode of showing this than by the evidence of the party himself that he had received the information. Whether in fact such information was or was not correct is immaterial for the purpose of determining its admissibility; and hence it is no objection to its admission that it was not given under the sanction of an oath, or that the opposite party had no opportunity of cross-examining the informant. The truth of the information is a distinct issue, and must be established by competent evidence; but upon the theory that the imformation was correct, the plaintiff, in the present instance, had the right to show that the defendants had received such information, and thus obviate any claim that might be made by them that they had exonerated themselves from liability by procuring the elevator to be constructed by a competent and reputable manufacturer.

The evidence thus introduced was not, moreover, within the rule which excludes hearsay. Hearsay is a species of derivative evidence which is offered for the purpose of establishing some specific fact in a case, and rests on the veracity and competency of some other person than the witness. Such testimony is excluded whenever it appears that a higher degree of evidence of that fact can be obtained by the production of the person from whom the evidence offered was derived; but whenever the testimony of such person is of no higher degree in establishing the fact to be shown than the evidence offered, either is original and primary evidence of that fact. If the fact sought to be established is, that certain words were spoken, without reference to the truth or falsity of the words, as, for instance, that a certain statement was made by a party to the action as an admission of a fact, or was made to him as a notice, or under such circumstances as to require action or reply from him, the testimony of any person who heard the statement is original evidence, and not hearsay. (Wharton on Evidence, sec.

254; Greenleaf on Evidence, sec. 100; *People* v. *McCrea*, 32 Cal. 98; *People* v. *Estrado*, 49 Cal. 171.) Such evidence is admitted for the purpose of establishing merely the utterance of the words, and not their truth, but the admission in evidence of the words spoken is not to be used in determining the issue of their truth. Necessarily, the words so spoken are brought before the jury, but the jury can readily be instructed by the court that they are not to regard them as proof of the facts that are stated. (*People* v. *Estrado*, 49 Cal. 173.) "It sometimes happens that a declaration is evidence for a particular purpose, although it is not to be taken as evidence to prove the truth of the facts declared; for the rule seems to be, that if the declaration be evidence as a circumstance in the action for any purpose, it is to be received; and the jury are to be directed not to consider it for other purposes for which abstractedly it could not have been received." (Starkie on Evidence, 89.)

Upon these principles, when Ravekes was told in what way the elevator should be run, and what would be the consequence of running it otherwise, the receiving of that instruction became a distinct fact in the case, and could be shown by any one who heard it. His own admission, whether upon the record or as a witness at the trial, that such instruction was given him, obviated the proof by any other witness, but cannot be considered as hearsay. "As matter of evidence and practice, proof of actual knowledge may be of great importance. If danger of a well-understood kind has, in fact, been expressly brought to the defendant's notice as the result of his conduct, and the express warning has been disregarded or rejected, it is above hearsay, and more convincing to prove this than to show in a general way what a prudent man in the defendant's place ought to have known." (Pollock on Torts, 356.)

3. The court did not err in allowing the plaintiff to read certain counter-affidavits upon a motion for a new trial. (*Spottiswood* v. *Weir*, 80 Cal. 451.) One of the grounds of the motion was the misconduct of the jury,

and in support of this ground, the defendant had filed and served certain affidavits, to the effect that one of the jurymen had made inquiries about the workings of an elevator outside of the court-room. Within five days after these affidavits had been filed, the plaintiff caused certain affidavits, which were directly responsive to them, to be prepared, but they were not filed until more than ten days thereafter. Upon affidavits on the part of the plaintiff showing these facts, together with an affidavit for the purpose of showing that it was by reason of the inadvertence and excusable neglect of his attorneys that they had not been filed, the court allowed them to be filed and read.

This ground of the motion for a new trial, as well as the subject-matter of the affidavits, made it essentially proper that the court should allow the plaintiff an opportunity to reply to these affidavits, if it was within its power to do so; and matters presented in support of a claim of inadvertence and excusable neglect are so greatly within the discretion of the court to which they are addressed, that unless there should appear to be an abuse of that discretion, we would not interfere with its action. The defendants were not entitled to a new trial upon this ground, unless the facts upon which it was based existed, and the time within which the plaintiff might controvert such affidavits is not made by the statute jurisdictional, or declared to be a limitation upon the exercise of such right. It is only a rule of procedure, and in the absence of statutory limitation, is subject to the equitable control of the court, and the court should disregard any error or defect in the proceedings, whenever a substantial right of a party is not affected. (Code Civ. Proc., sec. 475.) Rules of procedure, whether statutory or made by the court, are intended to facilitate courts in doing justice between the parties. They are framed with a view to enable litigants to properly present their cause for determination; and courts, in the exercise of their supervisory care over them, should be inclined to take that course which will enable them to

ascertain the actual facts in a cause. For the guidance of parties, certain formalities are required, and certain times specified within which the several steps are to be taken; but, except in matters which are jurisdictional, these provisions are intended for the convenience of courts and litigants, and should be liberally construed.

4. Upon the cross-examination of the defendant Ravekes, the defendants endeavored to show that he had taken no part in the defense of the present action; and upon his re-direct examination, he was asked whether he had not advocated with his firm a settlement of the case, to which the defendants objected, upon the ground that it was "incompetent and irrelevant," but did not specify the grounds upon which they claimed it to be incompetent. The court overruled their objection, and it is now contended by them that in this ruling the court violated the rule which precludes a party from giving evidence relative to offers for a compromise which have been rejected. In the present case, however, there was no treaty for a compromise depending between the parties, and the testimony introduced did not relate to the offer of any terms of compromise, or to any dealing with the adverse party upon the subject of a compromise; and the rule which excludes offers made for the purpose of settlement is inapplicable.

The statement of a party against whom a claim is made, that he is willing to settle the claim, is a declaration by him against his interest, sometimes called a self-disserving or self-harming statement; and section 1870 of the Code of Civil Procedure provides that upon the trial of a cause, evidence may be given of,— "2. The act, declaration, or omission of a party, as evidence against such party." Such declarations are classed in books on evidence under the head of Admissions. Mr. Stephen, in his treatise on Evidence, defines an admission to be, "a statement, oral or written, suggesting any inference as to any fact in issue, or relevant, or deemed to be relevant, to any such fact made by or on behalf of any party to any proceeding." Within this definition, the testi-

mony sought from the witness Ravekes was admissible. Such a declaration, in the absence of any other evidence than that he made it, would justify a jury in drawing the inference that he considered himself liable for the claim, since ordinarily men are willing to settle only those claims for which they are liable, and consequently the statement is admissible upon the same principles as would be his direct statement that he was liable for the claim. The making of such admission is a fact which is relevant to the issue upon his liability. Proof of making the admission is not, however, proof of the fact of his liability, but is only evidence in support of proving that fact; and the weight of such evidence, as well as its sufficiency for authorizing such inference, must be determined by the jury. The declaration may have so little weight in itself that the jury would not regard it as entitled to any consideration; and the party making the declaration may countervail its entire weight and sufficiency by showing the circumstances under which it was made, or the purpose for which he made it, as, for example, that he made it under a misapprehension of the facts, or with a view to a speedy determination of the controversy, or out of a charitable regard for the claimant; but the declaration itself is admissible, upon the ground that the facts implied therein are relevant to the issue in the case. Admissions are generally regarded as weak evidence for the proof of a fact, and are never conclusive of the facts stated, or of the inference to be drawn therefrom; and our statute requires the jury to be instructed, on all proper occasions, " that the evidence of the oral admissions of a party ought to be viewed with caution." (Code Civ. Proc., sec. 2061, subd. 4.) An exception to the admissibility of such admissions exists when they are made by way of an offer to buy peace, or with reference to negotiations with the adverse party for a compromise of the dispute. Under such circumstances, except as they are admissions of distinct facts, they are regarded as hypothetical admissions, from which it is not proper to draw any inference of liability, and there-

fore are not to be received in evidence. The rule, how-
ever, which excludes offers made for the purpose of a
compromise, does not apply to statements made by a
party which are in no wise connected with any attempt
at a compromise, whether these statements are made to
a stranger or to his co-defendant. (*West* v. *Smith*, 101
U. S. 273; *Ashlock* v. *Linder*, 50 Ill. 169; *Marvin* v. *Rich-
mond*, 3 Denio, 58; *Molyneaux* v. *Collier*, 13 Ga. 415; *Mc-
Lendon* v. *Shackleford*, 32 Ga. 474; *Clapp* v. *Foster*, 34
Vt. 580; *Gulzoni* v. *Tyler*, 64 Cal. 334; Greenleaf on Evi-
dence, sec. 192; 1 Phillips on Evidence, Cowen & Hill's
note No. 124; Wharton on Evidence, secs. 1077, 1090.)

The question asked of the witness Ravekes concerning
the statements of Smith when he came up in the eleva-
tor were so clearly connected with the accident as to be
relevant to the issue between the parties, and the reply
was of such a nature that the defendants could not have
been prejudiced thereby.

5. We cannot hold that the damages were so excess-
ive as to appear to have been given by reason of any
passion or prejudice on the part of the jury.

The plaintiff, at the time of the accident in 1878, was
thirty-six years of age, in good health, and engaged in
an extensive business, which required great physical
activity. The elevator fell with him from the upper
floor of the building to the basement, a distance of from
forty to forty-five feet, and by the fall he was so injured
as to prevent him from continuing his business, and to
disable him from engaging in any active occupation.
It is unnecessary to recount in detail all the various
injuries which he received, or the sufferings which he
endured during the time that he was under the care of
the surgeon. He was confined to his bed for nearly a
year, and it was three years before he could walk the dis-
tance of a block. When he was first carried to his
house, his limbs were completely paralyzed, his right
leg broken with a comminuted fracture, and the bones
of the shin protruding from his flesh and clothes, the
bones of one ankle broken, and the arch of his foot so

injured as to destroy the joint, and deprive him of all control of the foot. His spinal column received such concussion as to produce a partial permanent paralysis in his legs. At the time of the trial, ten years after the injury, it was shown by the testimony of the surgeons who then examined him, that his right leg had only one fourth of its original vigor, and but little power of motion, and that his other leg was atrophied by reason of the injury to his spinal column, and that he would never recover any further use of his limbs; and also, that as he grew older, he would be likely to lose their use entirely. In addition to this, he received serious injury to his bladder, which remained paralyzed for many months, and caused him to suffer greatly; and also to the rectum, from which he had not become free at the time of the trial. The jury, in addition to the testimony concerning his injuries, had an opportunity to see the plaintiff himself, and determine how far the testimony was corroborated by his appearance.

It is not contended by the appellants that the record discloses any indication of passion or prejudice on the part of the jury in determining the amount of damages which they awarded, other than the mere fact of its amount. The judge before whom the case was tried approved the verdict, notwithstanding the objection to the amount made by the appellants, and in consideration of the character and extent of the injuries shown to have been sustained by the plaintiff, we are not inclined to disregard his action.

The judgment and order are affirmed.

McFARLAND, J., and GAROUTTE, J., concurred.

DE HAVEN, J., concurring. — I concur in the judgment and in the opinion of Mr. Justice Harrison, except that part which holds that the testimony of the witness Ravekes, upon his re-direct examination, to the effect that while a member of the firm of Whittier, Fuller & Company he had advocated a settlement of plaintiff's claim for damages, was competent as an admission of

a fact by one of the parties in interest, and admissible as such against the other defendants. I cannot accept this as a correct rule of evidence. But still, in my opinion, the ruling of the trial court in admitting this evidence can be justified upon another ground.

The witness, in his examination in chief, testified to material facts tending to show negligence on the part of the servant of defendants in his mode of operating the elevator at the time of the accident which resulted in the injury of which plaintiff complains. The entire purpose of the cross-examination, which was conducted with great skill on the part of the attorney for the defendants, seems to have been to show that some time after the accident the witness was compelled to withdraw from the firm of which he and the defendants were members, because he had overdrawn his account with the firm without the consent of his copartners, and that they had charged him with peculation, and in consequence that their relations were unfriendly at the time of the trial. The inference, of course, sought to be drawn from these facts was that the matters testified to by the witness were not true, and that his testimony was simply the result of the subsequent trouble between himself and the defendants.

Under these circumstances, it was not improper to show by the witness that prior to any difficulty with defendants, his advice to them was entirely consistent with his present testimony, and such as would probably have been given in view of the existence of the facts about which he testified. It is held that former consistent statements of a witness are admissible to support his testimony when it is charged to have been a recent fabrication, in which case, in order to repel such an imputation, it is proper to show that the witness made a similar statement at a time when the supposed motive for such fabrication did not exist. (Rapalje on Witnesses, 369, 370); and the evidence under discussion comes within the spirit and reason of the rule just stated. If the defendants desired to show that this ad-

vice was not based upon the facts about which he had
given testimony, but such action was simply urged upon
the ground that it was wise to avoid a lawsuit, and
better to pay an unfounded claim than to be involved
in litigation, they should have further cross-examined
the witness, and if this had been made to appear, the
evidence could have been stricken out; but in the ab-
sence of any explanation, the evidence tended in some
degree to support the original testimony of the witness,
and to rebut the inference which the defendants evi-
dently sought to draw from the circumstances under
which they claimed he retired from the firm.

In the examination of a witness for the purpose of
showing motive, interest, or prejudice, or in rebutting
an imputation of giving testimony from some unworthy
motive, much is necessarily left to the discretion of the
judge of the lower court; and it does not seem that in
this instance there was any improper exercise of discre-
tion in the ruling upon the question referred to.

Beatty, C. J., and Sharpstein, J., concurred.